# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Jessica Arden Ettinger
Anderson M. Gansner
Gabriela A. Leija
Dennise Moreno
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Alexander P. Vlisides
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin  53703

Telephone 608-260-9900
Facsimile 608-260-9901

March 29, 2022

Honorable William M. Conley
United States District Court Chief Judge
120 North Henry Street
Madison, Wisconsin 53703

     Re:    *United States v. McKenzie W. Johnson*
            Case No. 21-cr-88-wmc

Dear Judge Conley:

In anticipation of the sentencing hearing, the defense submits this memorandum. The guidelines range is 360 months to life in prison and the binding plea agreement calls for a sentence from 15 to 20 years. Johnson requests a sentence of 15 years.

### I. Johnson's extraordinary support demonstrates his potential for rehabilitation.

Johnson grew up and spent his life in the Eau Claire area. PSR § 84, 88. He has led a rich personal and professional life. He built a community of family and friends, who have provided this Court with extraordinary letters in praise of his character. Att. A. They describe him as a selfless person, who routinely went above and beyond for others. That includes those close to him, such as taking over the grocery shopping for friends during the COVID-19 pandemic, to avoid putting his pregnant friend at risk. *Id.* at 10. It includes stopping in at the hospital every day for a month, to give support to a family he had previously barely known. *Id.* at 7. As a whole, the letters paint a picture of a generous person who made meaningful contributions to the people around him.

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.

Page -2-

One of the most remarkable aspects of these letters are the multiple people who go out of their way to tell the Court that they understand the offense he committed but would still trust Johnson with their own children. *Id.* at 7, 8, 9. This speaks to the extraordinary trust he built with people in life.

These letters are not run-of-the-mill praise for a friend or family member. The people who know him best continue to believe that Johnson was and can be a positive influence in their community.

## II. Johnson's private isolation and the path to rehabilitation.

In Johnson's professional life, he was a success. He spent many years moving up the ranks at Sacred Heart Hospital. PSR § 113. He began as a file clerk and eventually became Director of Education for the hospital. *Id.* He was well compensated and respected in his position. *Id.* In 2018, he began to sense that restructuring at the hospital may bring unwanted changes. *Id.* After considering his future, he found that he most enjoyed the teaching aspect of his job and decided to go back to school to become a teacher. *Id.*

Johnson had always lived in the Eau Claire area and his network was there. PSR § 88. But as an inexperienced teacher, he had to cast a wider net to get a teaching job. In August 2020, he got a job teaching business in middle and high school in Ladysmith, WI. PSR § 111. He was excited for the work, but the personal aspects were more difficult. He didn't know anyone in the area and moved there in the heart of the pandemic. *Id.* He struggled with the isolation.

He began to rely more on socializing online. This included the chat-with-strangers site Omegle. PSR § 27. He chatted with many adults on the site, but interacted with children as well. PSR § 27. He met the victims in this case, began corresponding and eventually engaged in sexual video chats that form the core of this case. PSR § 22-27.

This represented an escalation of behavior that he had managed in secret. He had been looking at child pornography for many years. PSR § 29. He had thrived in many areas of his life, had deep friendships and community, but this aspect of his life had always kept him in some form of isolation. He would make efforts to stop or avoid this habit. But he was terrified to seek the help he was sure he needed. The fear of revealing

Federal Defender Services
   Of Wisconsin, Inc.

Page -3-

this issue was paralyzing. He feared that even mentioning it to the people he most trusted—his mother, his best friend, even a therapist—could ruin his life. It could ruin his relationships. It could label him a sex offender.

The isolation was intense. He had a rich support network, but he could never muster the courage to confide in them about his biggest problem. He simply couldn't bear to tell another person about this struggle. Immediately after his arrest, he told police that he had wanted to get help, but didn't know where to turn and that he had never told anyone about his attraction. PSR § 29. He took responsibility and cooperated fully with the officers.

Johnson's desire for but failure to seek help does not excuse the offense. It does not heal the victim. That harm is done and for that he will face a significant prison sentence. But it is relevant to sentencing.

Many of the goals of sentencing tie closely to whether the person has taken advantage of the opportunity to change course. The need for deterrence is lower where a person has never received a sanction before. And the potential for rehabilitation and treatment is higher. After his arrest in this case was, literally, the first time Johnson had ever spoken to someone in his life about this attraction. Johnson can now see that he has an extraordinary support network that did not abandon him despite this case. Att. A. He has also demonstrated his genuine remorse to those around him and will further address the Court at sentencing. Att. A, at 1, 8, 9, 10.

It can, at times, be difficult to apply empathy for defendants in cases involving child pornography and minor victims. The instinct is naturally to play a protector role, to vindicate a victim. The instinct is appropriate, but must not overwhelm the other goals of sentencing. It is also necessary to seek to understand the defendant, because this is the only path towards a full consideration of the sentencing factors. Here, Johnson had never had the fortitude to confront his issue with child pornography until his arrest. It is not an excuse, but it is an opportunity for change. He is committed to treatment. And he can now face this problem without being quite so alone.

### III. The sentencing guidelines under USSG § 2G2.2, do not provide a sound starting point for the sentence and the requested sentence is sufficient to accomplish the goals of sentencing.

The guidelines section setting Johnson's offense level, USSG § 2G2.2, has been consistently criticized as being out of touch with sentencing trends. Many courts have concluded that this guidelines section should receive particular scrutiny because it was

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.

Page -4-

written based on a political directive from Congress rather than the Sentencing Commission's institutional expertise. *See United States v. Grober*, 624 F.3d 592, 608 (3d Cir. 2010) ("[T]he Commission probably did the best it could under difficult circumstances, but to say that the final product is the result of Commission data, study, and expertise simply ignores the facts."); *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (A district court's discretion to disagree with the crack guidelines "because those particular Guidelines 'do not exemplify the Commission's exercise of its characteristic institutional role' . . . applies with full force to § 2G2.2."); *United States v. Henderson*, 649 F.3d 955, 959-60 (9th Cir. 2011) ("[T]he child pornography Guidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role,' . . . so district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough*.").

The Sentencing Commission has explored some of the failings of these guidelines. *See* U.S. SENT'G COMM'N, *Report to the Congress: Federal Child Pornography Offenses* (2012). The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." Id. at iii, xi; id. at 209, 323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id.* at 6. In sum, the case law and sentencing expertise indicates that Johnson's guideline calculations are not an appropriate starting point for his sentence.

This is also reflected in the national sentencing trends. The sentencing commission provides statistics for defendants with the same sentencing guideline (§ 2G2.2), criminal history category (I), and total offense level (42) as Johnson. *Judiciary Sentencing Information (JSIN)*, U.S. SENT'G COMM'N, https://jsin.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FJSIN%2F_portal%2FJSIN&page=Sentencing%20Table (last visited Mar. 28, 2022). Courts imposed a below guidelines sentence in 66% of cases. *Id.*

Although the conduct involved in this case is very serious and involves production, not just possession, of child pornography, the conduct should be distinguished from cases involving physical sexual contact. It is the difficult task of this Court to calibrate sentences among varying degrees of culpable conduct. It does not denigrate the seriousness of this offense or the harm caused to the victims in this case to acknowledge that "hands-on" abuse should be considered more aggravated than virtual-

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Page -5-

only contact. Physical contact involves greater potential for physical trauma, a greater likelihood of coercion and a reduced ability of the victim to end the encounter. In this case, there was no physical touching or victimization of a minor in person and no allegation of any impropriety in person.

Finally, in light of the offense conduct and Johnson's choice to become a middle and high school teacher, the defense feels it is important to note that there has never been any allegation that Johnson acted inappropriately with a student. He was, of course, terminated due to his arrest. But neither before nor after the arrest has there been any accusation against him. Particularly given the shockwaves the arrest of a teacher sent out in a small community like Ladysmith, there is every reason to believe that if Johnson had acted even inappropriately, it would have been reported. There is no such allegation.

## Conclusion

If the Court accepts the plea agreement, it will be choosing among enormous sentences: 15 to 20 years in prison. The defense submits that a sentence within this range is sufficient to vindicate the victim and reflect the seriousness of the offense. The other aspects of Johnson's character and life indicate that a sentence of 15 years is sufficient to accomplish the goals of sentencing. His great capacity to positively impact those around him, his extraordinary support network and his commitment to treatment demonstrate that this sentence is sufficient to deter and rehabilitate him.

The defense requests a sentence of 15 years in custody. It also asks for the Court to make recommendations that Johnson be placed in a facility: as close as possible to his family in Eau Claire, WI; that offers sex offender treatment; and that offers training in business or culinary arts.

Thank you for your attention to this matter.

                                          Sincerely,

                                          */s/ Alex Vlisides*

                                          Alex Vlisides
                                          Associate Federal Defender