IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      v.

MCKENZIE W. JOHNSON,

      Defendant.

Case No.: 21-cr-88-wmc

GOVERNMENT'S SENTENCING MEMORANDUM

I.     Introduction

As a teacher, the defendant is a person society generally trusts with their children. This defendant, however, repeatedly abused that trust and sexually exploited several teenage and pre-teen girls. After one victim's mother discovered his conduct and reported it to law enforcement, he was caught and convicted of producing child pornography, in violation of 18 U.S.C. § 2251(a). The guidelines for his offense are 360 months to life in prison. For the reasons below, the government believes a sentence of 20 years, followed by a lengthy term of supervised release, is sufficient but not greater than necessary to reflect the gravity of the defendant's crimes and to meet the other sentencing factors under 18 U.S.C. § 3553(a).

II.     Factual Background

In March 2021, the mother of a 13-year-old girl (Minor A) in California called law enforcement, reporting that she discovered explicit messages between her daughter and a man later identified as the defendant. (R. 29, ¶ 12). Minor A told her mother that she met the defendant, who claimed to be ten years younger than he actually was, on Omegle,[1] and that they had been chatting for one or two months. (Id.). Minor A also told her mother that they transitioned from Omegle to Zoom and email and that Minor A was nude when she talked with the defendant on video chat. (Id.)

Minor A was then interviewed by law enforcement. She reported that she had been communicating with the defendant for two to three months. (R. 29, ¶ 14). After several weeks of going through Omegle, they switched to email and he asked if he could see her breasts and if she would dance for him. (Id., ¶ 15). He also exposed his penis to her. (Id.).

Officers reviewed the emails between Minor A and the defendant and saw that the defendant referred to Minor A as "baby gurl" and they both said "I love you" to each other. (R. 29, ¶ 17). He also told her to delete all the emails between them. (Id., ¶ 16).

Even though he used a fake name on Omegle, agents were able to identify the defendant as the person with whom Minor A was communicating and executed a

---

[1] According to Omegle's website, it is a free online chat website that allows users to socialize without the need to register. The service randomly pairs users in one-on-one chat sessions where they chat anonymously using the names "You" and "Stranger" or "Stranger 1" and "Stranger 2."

search warrant at his home in Ladysmith.  Agents interviewed the defendant the same day they executed the search warrant.  The defendant first denied knowing anything about the email address used to communicate with Minor A.  (R. 29, ¶ 21).  However, when questioned further, he admitted that he created the email address and was its sole user. (Id.).  He admitted meeting Minor A on Omegle and creating a code word to find her on the anonymous platform.  (Id., ¶ 22).  He admitted that halfway through his "relationship" with Minor A, he learned that she was 14, but that he continued communicating with her.  (Id., 23).  He further admitted they participated in Zoom sessions where both were naked and masturbating.  (Id.).  After initially lying to the agents and saying there would not be child pornography on any of his devices, he told officers there were "a lot" of videos on his iPad.  (Id.).  He said that while he primarily communicated with Minor A from his home, he also emailed her from the school when he was working. (Id., ¶ 24).

The defendant admitted to using Omegle to chat with approximately five children, some as young as 10 years old.  (R. 29, ¶ 27).  During these conversations, the children would be naked and exposing their genitals.  (Id.).  He also used Omegle and other platforms to exchange child pornography with others.  (Id.).

Agents searched the defendant's home and found several electronic devices which were later searched.  On these devices, agents found "conservatively," more than 1000 images of child sexual assault material (CSAM).  (R. 29, ¶ 40).  One of the videos found was a screen-recorded Discord chat with Minor B, an 11-year-old, in which the defendant instructs her on how to insert a sharpie inter her vagina.  (Id., ¶ 39).  Not only

3

does the defendant instruct Minor B what to do with the marker, he also instructs her on how to adjust her hand so he can get a better view. (Id.).

III.     The Guidelines

Neither side objected to the guidelines in the presentence report. The defendant, however, argues in his sentencing memo that the guidelines under § 2G2.2 do not provide a sound starting point for the sentence. The defendant's arguments on § 2G2.2 are misplaced for several reasons. First, the defendant was convicted of producing child pornography. While § 2G2.2 comes into play due to the possession conviction and grouping, the defendant's guideline range on production alone would have been 235 to 293 months. Second, the government is not asking for a sentence within the guideline range as calculated by the PSR, but rather has asked for a sentence significantly below. Finally, even if the defendant's attack on the guideline mattered, a 20-year sentence would still be warranted.

On June 29, 2021, the Sentencing Commission issued a new report on the Federal Sentencing of Child Pornography Non-Production Offenses. https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses. The Commission emphasized the seriousness of non-production offenses, noting that child pornography offenses normalize the sexual abuse of children and may promote existing tendencies towards sex offending and the production of new images. *See* Report at page 1. The Commission also found that the rise of the internet facilitated the growth of online child pornography "communities" in chat rooms and other online platforms. *Id.* While the Commission

4

notes that some of the enhancements no longer are helpful in distinguishing among offenders, the Commission noted additional factors that a Court can consider when fashioning a sentence: (1) the content of the offender's child pornography collection and nature of the offender's collecting behavior; (2) the offender's degree of involvement with other offenders, particularly in an internet community devoted to child pornography and child sexual exploitation; and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense. *Id.*

The images and videos of minors A and B and the other images in the defendant's collection was disturbing. The defendant possessed at least 1000 images, some of which were toddlers. The presence of such young victims makes his criminal activity all the more serious and egregious. Additionally, this was not a case where the defendant randomly stumbled upon child pornography on one occasion. Instead, this is a defendant who has been involved with child pornography for 20 years. He used multiple forums to engage with like-minded individuals and exchange explicit images with them. And he sexually exploited several underage girls. To the extent non-production guidelines impact the Court's sentencing decision, the factors the Court should consider weigh in favor or a 20-year sentence.

IV. Sentencing Argument

The government requests a below-guideline sentence of 20 years in custody. This sentence is sufficient but not greater than necessary to satisfy the purposes of sentencing, as set forth in 18 U.S.C. § 3553(a). Nothing suggests a sentence lower than

5

that is appropriate in this case.

    A.    The Nature and Circumstances of the Offense and Characteristics of the Defendant

The defendant is in certain respects, every parent's worst nightmare: a predator hiding in plain sight. The defendant's perceived normalcy and kindness as described in his letters of support is part of what makes him so dangerous. He was a teacher, who in addition to a student's parents, is responsible for molding children and preparing them for the future. Instead, he used the internet to sexually exploit children in other classrooms.

The defendant's offense was not a one-time event. It was not even a multiple-time event with a single victim. This defendant exploited multiple children, some as young as ten years old, on multiple occasions. By his own admission, he has been looking at CSAM for the last 20 years. While claiming that he was sexually attracted to girls between the ages of 12 and 14, agents found multiple images and videos of prepubescent children, including toddlers. While the defendant was convicted of just one count, his conduct occurred countless times over a lengthy period. It was not a single isolated event and a 20-year sentence reflects that.

Additionally, the defendant admitted sending other people CSAM on several occasions. While he denied sending images of Minor A, the denial rings somewhat hollow in light of his initial lies to law enforcement. Additionally, the defendant was never questioned about whether he distributed images of Minor B because agents did not learn of his conduct with her until analyzing his devices later in the investigation.

6

The seriousness of the offense can also be seen by the impact on not only the defendant's victims, but the victims' family members. It is expected one parent will speak at sentencing. And as the parent of Minor B wrote, "the knowledge of the event haunts me in a way I will never recover. I will always wonder about teachers around my kids, I'm paranoid to what I say and do and allow all devices for me and my family. I simply don't look or trust in the world anymore." (R. 29, ¶ 43).

No question this case has some mitigating facts as well. There is no evidence the defendant sexually assaulted any child or traveled to meet anybody. But his actions in having ongoing one-on-one "relationships" with numerous children, engaging with these children in a sexually explicit manor – in some cases directing them how to engage in that conduct, then creating videos of these children engaged in sexually explicit conduct at his direction, cannot be ignored. His actions warrant a substantial punishment.

      B.      Respect for the Law, Just Punishment, Adequate Deterrence, and Protection of the Public

A 20-year sentence in this case reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. The mandatory minimum of 15 years does not. Had the defendant taken a single photograph of a 17-year-old-girl engaged in sexually explicit conduct, he would be guilty of violating the same statute and be subject to a mandatory minimum sentence of 15 years in prison. Given the defendant's conduct in this case, including producing multiple videos of at least two

7

children, communicating with other pre-teen children, and distributing CSAM over multiple platforms, the mandatory minimum is not a reasonable sentence.

A 20-year sentence is also appropriate given the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 438 U.S. 84, 103 (2003). The fact that the defendant will be subject to restrictions and supervised release when he gets out of prison does not offer any guarantee that he will not offend again. *See United States v. Irey*, 612 F.3d 1160, 1215 (11th Cir. 2010) (discussing studies and other data showing that "supervised release . . . often fails to prevent sex offender recidivism"). In short, "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does." *Id.* at 1216.

The sentence should deter the defendant from engaging in further criminal behavior, deter others from attempting to commit such awful crimes against children, and protect the public by ensuring that the defendant does not have another opportunity to victimize other children. A lengthy sentence will accomplish this goal. Based on the egregious and lengthy nature of the defendant's criminal misconduct and his admitted interest in children, there is a compelling need to deter future similar conduct by him, as well as other like-minded individuals with an interest in children. There is no reason to believe that anything but a lengthy term in prison will deter him from committing similar offenses in the future.

This defendant, through the crimes documented in this case, has shown himself to be a deceitful, serial offender with no demonstrated ability or attempts to cease or

8

control his behavior. He repeatedly victimized multiple girls with no sign that he planned to stop before he was caught. To accomplish the goals of sentencing – particularly deterrence and protection of the public – the defendant must be sentenced to a truly significant term of imprisonment.

V.     Conclusion

For all the foregoing reasons, the government respectfully recommends that this Court sentence the defendant to twenty years in prison to be followed by a significate term of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Dated:  March 29, 2022

Respectfully submitted,

TIMOTHY M. O'SHEA
United States Attorney

By:     /s/
ELIZABETH ALTMAN
Assistant United States Attorney